IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAJ SIDHU, | CASE NO. CV F 06-1838 AWI LJO |
| Plaintiff, | **ORDER ON PLAINTIFF'S REMAND MOTION** |
| vs. | (Doc. 14.) |
| SIERRA ENTERTAINMENT, | |
| Defendant. | |

## INTRODUCTION

Plaintiff Raj Sidhu ("Mr. Sidhu") seeks to remand to Stanislaus County Superior Court this state law civil rights and negligence action on grounds that his claims are not preempted by the Federal Railroad Safety Act, 49 U.S.C. §§ 20101, et seq. ("FRSA"). This Court considered Mr. Sidhu's remand motion on the record and VACATES the February 2, 2007 hearing, pursuant to this Court's Local Rule 78-230(h). For the reasons discussed below, this Court REMANDS this action to the Stanislaus County Superior Court.

## BACKGROUND

### Mr. Sidhu's Civil Rights Claims

Mr. Sidhu is physically disabled and uses a wheelchair. Defendant Sierra Entertainment ("Sierra") operates a railroad dinner train out of Oakdale, California. On July 24, 2006, Mr. Sidhu filed in Stanislaus County Superior Court his complaint to allege a cause of action for violation of the Unruh

1

Civil Rights Act, Cal. Civ. Code, §§ 51, et seq. ("Unruh Act"), for physical disability discrimination based on "failure to remove structural barriers" and "inadequate wheelchair clearance at the entrance of the railroad dinner train," a public accommodation. The Unruh Act cause of action further alleges that Sierra denied Mr. Sidhu "access to the services and facilities on offer" to discriminate against Mr. Sidhu and has refused "to take any steps to rectify the situation and to provide full and equal access for [Mr. Sidhu] and other persons with physical disabilities." Mr. Sidhu's complaint also alleges a negligence cause of action that Sierra failed to exercise ordinary care and to ensure its dinner train complied with accessibility guidelines and that facilities were configured to ensure equal access by persons with wheelchairs.

**Removal To This Court**

On September 6, 2006, Sierra removed Mr. Sidhu's action to this Court's Sacramento division on grounds that this Court has federal question jurisdiction under 28 U.S.C. § 1331 in that Mr. Sidhu's claims are preempted by the FRSA. On December 19, 2006, the action was transferred to this Court's Fresno division.

**DISCUSSION**

**Removal Principles**

Under 28 U.S.C. § 1441(a), a defendant may remove from state court any action "of which the district courts of the United States have original jurisdiction." Federal courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Because of the "Congressional purpose to restrict the jurisdiction of the federal courts on removal," the removal statute is strictly construed against removal.[1] *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-109, 61 S.Ct. 868, 872 (1941); *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996). Federal jurisdiction "must be rejected if there is any doubt as to the right of removal in the first instance." *Duncan*, 76 F.3d at 1485; *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). A defendant "has the burden of establishing that removal was proper." *Duncan*, 76 F.3d at 1485; *Harris v. Provident Life and Accident Ins. Co.*, 26 F.3d 930, 932 (9th Cir. 1994).

---

   2   "At the core of the federal judicial system is the principle that the federal courts are courts of limited jurisdiction." *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979).

2

**FRSA Preemption**

Mr. Sidhu claims that the FRSA does not preempt his Unruh Act claim. There is a presumption against finding federal preemption of state law. *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 113, S.Ct. 1732, 1739 (1993). "Pre-emption will not lie unless it is 'the clear and manifest purpose of Congress.'" *CSX Transp.*, 507 U.S. 658, 113 S.Ct. at 1737 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152 (1947)).

The FRSA is a comprehensive system of railway safety regulations and was enacted to "promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101; *Thiele v. Norfolk & Western Ry. Co.*, 68 F.3d 179, 182 (7th Cir. 1995). The Secretary of Transportation is empowered to "prescribe regulations establishing minimum standards for the safety of cars used by railroad carriers to transport passengers." 49 U.S.C. § 20133(a). The FRSA addresses national uniformity of regulation and in turn preemption:

> Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable. A state may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters) prescribes a regulation or issues an order covering the subject matter of the State requirement. A state may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order –
>
> (1) is necessary to eliminate or reduce an essentially local safety hazard or security hazard;
>
> (2) is not incompatible with a law, regulation, or order of the United States Government; and
>
> (3) does not unreasonably burden interstate commerce.

49 U.S.C. § 20106 ("section 20106").

Despite section 20106, FRSA preemption is disfavored. *Williams v. Nat'l Railroad Passenger Corp.*, 392 F.Supp.2d 790, 792 (E.D. Tex. 2005). "FRSA preemption is even more disfavored than preemption generally." *United Transp. Union v. Foster*, 205 F.3d 851, 860 (5th Cir. 2000) (citing *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 515 (5th Cir. 1999)). To apply FRSA preemption, a court "eschews" broad categories, such as "railroad safety," and focuses on the federal regulation's subject matter. *Williams*, 392 F.Supp.2d at 792. Courts should interpret relevant federal regulations

narrowly to ensure that the careful balance which Congress struck between state and federal regulatory authority is not improperly disputed. *Williams*, 393 F.Supp.2d at 792. The FRSA preempts state laws which impair or are inconsistent with Federal Railroad Administration regulations and which aim at the same safety concerns addressed by the Federal Railroad Administration. *Burlington Northern Railroad Co. v. State of Montana*, 880 F.2d 1104, 1106 (9th Cir. 1989).

Mr. Sidhu's primary argument appears to be that FRSA preemption does not apply in that "the regulations at stake in this case are not about railroad safety." Mr. Sidhu notes that the Unruh Act: (1) incorporates a violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. ("ADA"), Cal. Civ. Code, § 51(f) ; (2) provides an independent state law basis for injunctive relief not exceeding that required by other law, Cal. Civ. Code, § 52(g); and (3) provides statutory damages for intentional violation, Cal. Civ. Code, § 52(a). Mr. Sidhu argues that the Unruh Act imposes no additional or different regulation on Sierra than that required by the ADA but "provides an additional damages provision and independent state law basis for an injunction, attorney's fees and costs."

Sierra responds that the FRSA and its regulations comprehensively "occupy the area of safety on railroads, to include safety and specifications for passenger cars. Sierra notes that the Secretary of Transportation sets minimum standards regarding "crashworthiness," "interior features" affecting passenger safety, maintenance and inspection, emergency response procedures and equipment, and operating rules and conditions that directly affect safety. 49 U.S.C. § 20133(a)(1) – (5). Sierra points out the Secretary of Transportation's authority covers "tourist, historic, scenic [and] excursion railroad carriers," such as Sierra's dinner train. Sierra references Department of Transportation and Federal Railroad Administration regulations on passenger car safety, including those governing seating, internal fittings and surfaces (49 C.F.R. § 228.233); rollover strength (49 C.F.R. § 238.215); load bearing structures (49 C.F.R. § 238.213); and safety appliances (49 C.F.R. § 238.229). Sierra argues that the Department of Transportation and Federal Railway Administration regulations "encompass much more than ADA compliance" in that "they go to the very safety of the cars themselves." Sierra concludes that FRSA preemption exists because the FRSA and its and regulatory scheme cover the "accessibility issue" raised by Mr. Sidhu.

The FRSA and its regulations cover specifications and capacities for railway passenger cars and

in turn passenger car safety. Sierra points to no statute or regulation specifically covering passenger car access for the disabled. Although accessibility would seem a logical topic of federal regulation, Sierra relies on broad references to passenger car "safety," not accessibility. Given the disfavor of FRSA preemption, this Court is to "eschew" broad categories, such as "railroad safety," and to focus on the federal regulation's subject matter. *Williams*, 392 F.Supp.2d at 792. Again, Sierra points to no specific regulation addressing the crux of Mr. Sidhu's claims. As such, Sierra has failed to meet its burden to establish FRSA preemption, and doubts against FRSA preemption favor Mr. Sidhu.

As a backup, Mr. Sidhu appears to argue that the Unruh Act satisfies section 20106's three prongs to avoid FRSA preemption. This Court next turns to section 20106's three prongs to address whether Mr. Sidhu's claims are subject to preemption.

### *Local Safety Hazard*

As a reminder, to avoid preemption under section 20106, an additional or more stringent state law related to railroad safety must be necessary to eliminate or reduce an essentially local safety hazard. Mr. Sidhu notes that barrier removal and accessible design required by the ADA and Unruh Act are "safety regulations" to ensure: (1) use of public facilities by disabled people, including those who use wheelchairs; and (2) safety of persons with impaired mobility. Mr. Sidhu points out that many California and federal regulations address access to facilities "as their primary purpose" and "have obvious safety implications for ordinary users as well as people [who] use wheelchairs." Thus, Mr. Sidhu appears to assert, as an alternative argument, that the Unruh Act and its regulations "are about safety."

Mr. Sidhu next contends that California laws prohibiting disability discrimination "protect a broader class than comparable Federal laws" and provide protections "independent from the ADA." Mr. Sidhu points out that California Civil Code section 52(a) sets a minimum $4,000 statutory penalty to provide a greater protection than the ADA against arbitrary and intentional disability discrimination in California. Turning to locality, Mr. Sidhu offers that "the regulation being applied is the same as the national one, but the behavior in question is located entirely inside California, hence a local safety issue." Mr. Sidhu further offers that California provides "protection to classes of persons who might not be covered by federal rules" and "believes that federal protections for people with disabilities are

insufficient." Mr. Sidhu concludes that section 20106's first prong is satisfied in that the Unruh Act addresses "safety of persons with disabilities" and "is an essential local safety concern that applies to a recreational dinner train operating entirely within the state."

Although 49 U.S.C. § 20106 allows "additional or more stringent laws and regulations related to railroad safety," it does so only "when necessary to eliminate or reduce an essentially local safety hazard." *Williams*, 392 F.Supp.2d 790, 794. "The locality exception does not apply to state-wide hazards." *Williams*, 392 F.Supp.2d at 794 (citing *United Transp. Union v. Foster*, 205 F.3d 851, 861 (5th Cir. 2000)). A passenger car design defect "must – by its very nature – run everywhere the trains do; the hazard travels with the train and is therefore not local." *Williams*, 392 F.Supp.2d 794.

Sierra correctly notes that the local safety hazard "is limited to a localized or geographically discrete area with characteristics that are neither common nor statewide." Although a moot point given the absence of FRSA preemption, Mr. Sidhu fails to demonstrate that the Unruh Act addresses a local railroad safety issue.

### *Incompatibility With Federal Law*

Turning to section 20106's second prong, to avoid preemption, an additional or more stringent state law related to railroad safety must not be incompatible with federal law. Mr. Sidhu appears to contend that Sierra's dinner train is not subject to Secretary of Transportation regulations addressing transportation services for disabled individuals. Mr. Sidhu points to 49 C.F.R. § 37.37(c):

> Conveyances used by members of the public primarily for recreational purposes rather than for transportation (e.g., amusement park rides, ski lifts, or historic rail cars or trolleys operated in museum settings) are not subject to requirements of this part. Such conveyances are subject to Department of Justice regulations implementing title II or title III of the ADA (28 CFR part 35 or 36), as applicable.

Mr. Sidhu claims that the Department of Justice regulations referenced in 49 C.F.R. § 37.37(c) are not about railroad safety to raise a preemption issue. Mr. Sidhu argues that the "Secretary of Transportation has not regulated the specific issue of disability discrimination by recreational railroads" and the Unruh Act is not incompatible in the absence of comparable federal law. Moreover, Mr. Sidhu contends that the Unruh Act is in "harmony" with the ADA to provide "additional protection within California against arbitrary and intentional discrimination."

Sierra does not specifically address the incompatibility with federal law issue. Nonetheless, the issue is moot, and Mr. Sidhu's points further emphasize the absence of FRSA preemption as to his claims.

### *Burden On Interstate Commerce*

To avoid section 20106 preemption, an additional or more stringent state law related to railroad safety must not unreasonably burden interstate commerce. Mr. Sidhu argues that application of the Unruh Act to Sierra's dinner train does not affect interstate commerce in that the dinner train "is entirely contained within the boundaries of California and thus is subject to state law." Mr. Sidhu continues: "State law forbidding discrimination can in no way burden interstate commerce in this case, because defendant's train is not part of interstate commerce."

Given the absence of FRSA preemption here, the interstate commerce issue is moot, and Sierra does not challenge Mr. Sidhu's points.

### **CONCLUSION AND ORDER**

On the basis of good cause, this Court:

1. REMANDS this action to Stanislaus County Superior Court; and
2. DIRECTS this Court's clerk to take necessary action to remand this action to the Stanislaus County Superior Court and to close this action.

IT IS SO ORDERED.

**Dated:   January 30, 2007**           /s/ Lawrence J. O'Neill
66h44d                                                   UNITED STATES MAGISTRATE JUDGE